No. 26287

The Board of County Commissioners of the County of Otero, on behalf of itself and all others similarly situated v. The State Board of Social Services of the State of Colorado and Con Shea, Executive Director of said Board, and Robert Wherry, Executive Director of the State Department of Personnel

(528 P.2d 244)

Decided November 11, 1974.

436

Rexford L. Mitchell, Leonard R. Liss, for plaintiff-appellant.

John P. Moore, Attorney General, John E. Bush, Deputy, Douglas D. Doane, Assistant State Solicitor General, for defendants-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an appeal from an order of the Denver District Court dismissing the complaint of the Otero County Board of County Commissioners against the State Board of Social Services. We affirm the trial court's order.

The Board of County Commissioners of Otero County, the appellant herein, along with the Colorado State Association of County Commissioners, brought a class action pursuant to C.R.C.P. 23 challenging a rule adopted by the State Board of Social Services, one of the appellees herein. In their complaint, the plaintiffs asserted that the rule, designated as the "Revised County Compensation for 1974," providing salary

increases for county public assistance and welfare department employees, was adopted by the State Board of Social Services in excess of their jurisdiction and in abuse of their discretion. On October 1, 1973, the trial court issued a citation to the State Board to show cause why the contested rule should not be set aside. The court also issued an order temporarily restraining the State Board from enforcing or promulgating the said rule.

On October 12, 1973, pursuant to the State Board's motion, the trial court dissolved the restraining order as improvidently granted and dismissed the plaintiffs' complaint for want of standing. The plaintiffs' motion for new trial was denied. The Board of County Commissioners alone has taken this appeal.

■ The issue for this court to resolve is whether a Colorado county, acting through its Board of County Commissioners, has standing to challenge the rules and regulations promulgated by the State Board of Social Services. This question we answer in the negative, therefore affirming the trial court's dismissal of the Board of County Commissioners' complaint.

The appellant has asserted standing to challenge the legitimacy of the "Revised County Compensation" plan by virtue of 1969 Perm. Supp., C.R.S. 1963, 3-16-5(1) of the State Administrative Code, which provides:

"In order to assure a plain, simple, and prompt judicial remedy to persons or parties adversely affected or aggrieved by agency actions the provisions of this section shall be applicable."

The attorney general in answer to the arguments of the appellant relies solely on *County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970).

In *Love* the plaintiffs sought relief in the nature of mandamus and prohibition alleging abuse of discretion by the state board of equalization in reviewing appraisals of the county assessors and in ordering reappraisals of the county properties. We held that the county commissioners had neither standing nor legal authority to maintain the action.

■ We also restated the general proposition, in *Love,*

that a county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents, but rather is a political subdivision of the state existing only for the convenient administration of the state government. Inasmuch as a county is created to carry out the will of the state, we further held that a county is an "agency" within the meaning of the Administrative Code and as such is not a "person" who may seek review of "final agency action."

In reply to the attorney general, the appellants contend that in deciding *Love,* this court failed to cite or mention a 1969 amendment to the Administrative Code which purportedly limits the applicability of Code "to agencies of the state having *state-wide territorial jurisdiction."* 1969 Perm. Supp., C.R.S. 1963, 3-16-6. This section reads:

"[Article 16] applies to every agency of the state having state-wide territorial jurisdiction except those in the legislative or judicial branches, courts-martial, military commissions, and arbitration and mediation functions. It applies to every other agency to which it is made to apply by specific statutory reference; . . ."

■ Article 16 (1969 Perm. Supp., C.R.S. 1963, 3-16-1, *et seq.*) relates to rule making and licensing procedures by *state* agencies. Here we are concerned with the fixing of salaries by the State Board of Social Services. No argument is advanced that the State Board is not a state agency having state-wide territorial jurisdiction. Since the Board of County Commissioners is not engaged in rule making, so far as the instant proceedings are concerned, section 3-16-6 has no application to the problem.

The only argument which we need to consider is whether the appellent is a "party" adversely affected or aggrieved and therefore one who may properly seek judicial review of the State Board's action under 1969 Perm. Supp., C.R.S. 1963, 3-16-5. This point is raised by the appellant's contention that:

"The *Love* case . . . is silent on the meaning of the word 'party' and does not even address itself to the question."

In deciding *Love* the court's attention was directed to

C.R.S. 1963, 3-16-5, which only allowed judicial review to be sought by "persons" adversely affected or aggrieved. Based on C.R.S. 1963, 3-16-1(1)(c), which provides the definition of "person," we held that a county was an agency and therefore not a person. In the 1969 revisions, 3-16-5 was expanded to allow the pursuit of judicial review by "parties" adversely affected or aggrieved by an agency action. 1969 Perm. Supp., C.R.S. 1963, 3-16-1(1) defines "party" to include

"any person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any court or agency proceeding subject to the provisions of this article."

The addition of the term "party" in 1969 does not enhance the appellant's position or diminish the efficacy of the court's reasoning in *Love.* Viewing the term "party" in the context of the act makes it clear that its addition does not confer rights upon the Commissioners which did not exist under the original act.

As noted above, the agency action with which we are here concerned is rule making. C.R.S. 1963, 3-16-2 and, as amended, 1969 Perm. Supp., C.R.S. 1963. The general scheme of this section provides that whenever any agency is required or permitted by law to make rules, it shall make a public announcement to afford "interested *persons*" an opportunity to submit their views or otherwise participate informally on the proposals under consideration. Then, upon the adoption of the rules it is required that they be published in the Colorado Regulations Register by the Secretary of State and circulated to all persons who have asked to be on a mailing list maintained by the Secretary of State.

1969 Perm. Supp., C.R.S. 1963, 3-16-2(11)(j) provides that:

"Notice shall be given . . . in any manner required by statute and in any manner which the agency deems appropriate to get actual notice to all *persons* who may be affected." (Emphasis added)

There is nothing in the context of this section that specifically, or even impliedly, includes counties as persons or

parties entitled as of right to be admitted to agency hearings.

We also note that the legislative scheme embodied in the Colorado Social Services Code, Laws of 1973, Chapter 340, 119-1-1, *et seq.,* contemplates the county being an agent of the State Board of Social Services rather than a separate entity of sufficient independent identity to qualify as a "party."

The legislative policy is specifically declared in 119-1-2, as follows:

"It is the purpose of this chapter to promote the public health and welfare of the people of the state of Colorado by providing . . . *through the county departments in accordance with state department rules and regulations,* programs relating to public assistance and welfare, . . ." (Emphasis added)

Specific authority is delegated to the State Board of Social Services in Section 119-1-7(1)(b) to

"(v) [a]dopt rules governing fiscal and personnel administration for county departments."

and section 119-1-7(2) provides that,

"The state board shall fix minimum standards and qualifications for personnel based upon training and experience deemed necessary to fulfill the requirements and responsibility for each position, *and establish salary schedules based upon prevailing wages for comparable work within each county* or district or region where such data is available and is collected and compiled in a manner approved by the state director of personnel. . . . *The rules of the state department shall be binding upon the several county departments. . . .*" (Emphasis added)

Among other pertinent statutory provisions are the following:

In section 119-1-8, relating to administering federal grants-in-aid, the the state department is given the following powers, among others,

"(4)(b) To require as a condition for receiving grants-in-aid, that each county in this state shall bear the proportion of the total expense of furnishing public assistance as is fixed by law relating to such assistance;

"(c) To terminate any grants-in-aid to any county in this

state if the laws and regulations providing such grants-in-aid and the minimum standards prescribed by rules of the state department thereunder are not complied with;

"(d) To undertake forthwith the administration of all public assistance activities within any county of this state which has had its grant-in-aid terminated pursuant to paragraph (c) of this subsection (4); but the county shall continue to meet the requirements of paragraph (b) of this subsection (4)."

Further, section 119-1-10(2) provides the state department shall:

"(e) Provide services to county governments including the organization and supervision of county departments for the effective administration of public assistance and welfare functions *as set out in the rules and regulations of the state department, . . .*" (Emphasis added)

Pertaining to the county's duties, 119-1-17 provides that: "(1) The county departments shall serve as *agents of the state department* and shall be charged with the administration of public assistance and welfare and related activities in the respective counties in accordance with the rules and regulations of the state department." (Emphasis added)

■ It is thus apparent that the county, in the statutory scheme of things, is assigned its traditional role as an arm of the state, existing only for the convenient administration of the state governement and to carry out the will of the state. *County Comm. v. Love, supra,* and cases cited therein. Clearly, if the county was to qualify as a party, its challenges to the State Board's actions would serve as an impediment rather than a convenience.

■ We conclude that the right to judicial review of the final administrative actions of the State Board of Social Services, under the law of this state, is limited to those parties to the proceeding before the administrative agency whose rights, privileges or duties, as distinct from those of the State, are adversely affected by the decision. The county as an arm of the State Board of Social Services has no rights or privileges so far as its statutory duties are concerned and hence does not come within the definition of "party." Excluded from the provisions of 1969 Perm. Supp., C.R.S.

1963, 3-16-5, the county, and as such, the Board of County Commissioners are without standing to challenge the action of the State Board, even though they may have been extended the courtesy of presenting evidence at the rule making hearing.

█ As an additional argument, the appellants have suggested that they are entitled to standing as representatives of the taxpayers of their constituency. What we have said regarding "party" is applicable to this argument as well. We therefore reject the appellant's assertion of standing, relying again on *County Commissioners v. Love, supra,* in which the court said in response to an identical contention:

"Nor do boards of county commissioners have authority to sue as representatives of the taxpayers of their counties . . . ." *Arapahoe Co. v. Board of Equalization,* 23 Colo. 137, 46 P. 638 (1896).

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.